## James' Adm'r et al. v. Roane et al.

Feb. 12, 1946.

R. Hall Hood for appellants.

T. W. Crawford for appellees.

OPINION OF THE COURT BY CHIEF JUSTICE REES—Affirming.

J. R. James, a resident of Calloway county, died intestate in July, 1944. His nephew, Robert James, qualified as administrator of his estate, and on October 10, 1944, brought an action to settle his decedent's estate and to set aside, on the ground of failure of consideration, a deed to a lot in the town of Hazel which J. R. James and wife had executed to Charlie Clayton and Rosa Clayton on March 11, 1944. A. E. Roane and Essie Roane, his wife, Charlie Clayton and Rosa Clayton, his wife, were made defendants. It was alleged in the petition that J. R. James owned no personal property at the time of his death; that on March 11, 1944, he conveyed to Charlie Clayton and Rosa Clayton a house and lot in Hazel, Ky.; that in consideration for the conveyance the Claytons agreed to care for J. R. James and Rosa James, his wife, during the lifetime of each, and that they failed to carry out the contract in that they moved away from the property and abandoned the contract prior to the death of J. R. James. It was alleged that A. E. Roane and Essie Roane were claiming some right or title in and to the property described in the petition, and they were asked to set up any claim they were asserting. The plaintiff prayed that the deed to the Claytons be set aside and held for naught, and that the property be sold for the purpose of paying the debts of the decedent. The Roanes, in an answer, traversed the allegations of the petition, and alleged that they had pur-

chased the real estate described in the petition for a valuable consideration and that it had been conveyed to A. E. Roane by general warranty deed. They alleged further that the consideration for the conveyance made by J. R. James and wife to the Claytons was the agreement by the Claytons to take care of and support James and his wife during their lives and to pay their burial expenses. They alleged that the Claytons had performed their part of the contract. Mrs. Wade Enoch, a daughter of J. R. James by his first marriage, filed an intervening petition in which she joined in the prayer of the petition, and asked further that any sum remaining after payment of the debts of the decedent and the costs of the action be paid to her as the heir of J. R. James. The Claytons filed no pleadings. Proof was heard, and, on submission of the case, the chancellor refused to set aside the deed to the Claytons and dismissed the plaintiff's petition.

The record is an unsatisfactory one both as to the pleadings and the proof. The evidence is meager, particularly on the crucial issues in the case. Many facts which do not appear in the record are stated in the briefs. Neither the written contract entered into by J. R. James and the Claytons nor the deed to the Claytons was introduced in evidence, but there is no controversy as to the contents of these instruments. We are able to spell the following out of the record and the briefs:

J. R. James was about 78 years of age at the time of his death. His daughter by his first marriage lived at Paris, Tenn. Ill feeling between her and her father had existed for a long period of time, and she never visited in his home. According to one of appellants' witnesses, they had not been on speaking terms for nearly forty years. He owned no personal property, and there is no proof that he owed any debts at the time of his death. Both he and his wife were on the old age pension rolls. Prior to March 11, 1944, he owned a home in the town of Hazel. Only one witness, the administrator, testified concerning its value, and he stated that it was worth $1,500 to $1,800. The decedent had three nephews, Robert James, Galen James, and Less James, and a niece, whose name does not appear, who lived in Calloway county. It appears that all of them were fond of their uncle and were interested in his welfare. They were active in inducing him to enter into the contract with

the Claytons, as they believed the arrangement would be for the best interests of Mr. James and his wife. The Claytons moved into the James home after the deed to them was executed, and remained there until July 17 or 18, 1944. Mr. James was then critically ill and died two days after the Claytons left his home. It is conceded that the Claytons complied fully with the terms of the contract until the day they left, but it is contended they breached the contract by abandoning the James home and that this act on their part rendered the deed void. There is evidence for the appellees tending to show that the Claytons did not renounce the contract, and continued to comply with its terms; that they were compelled to leave by Mrs. J. R. James, but that they employed Less James, one of the nephews, to stay with his uncle and aunt and paid him $5 for his services. After the death of Mr. James, the Claytons, assisted by the James niece and one of the nephews, selected a casket and paid the undertaker $203.50. A few days after the funeral they purchased Rosa James' interest under the contract for $550, and paid her that sum. They then conveyed the house and lot to J. M. Marshall, and he conveyed it to the appellee A. E. Roane. The consideration is not disclosed by the evidence, but in appellees' brief it is stated that the property was sold for $1,100. The brief also states that the Claytons spent $300 for repairs on the James home, and that they received about $50 for their services after paying the expenses in connection with the care and burial of J. R. James and the cost of the repairs to the premises. We find no evidence to support this statement, but it is conceded by appellants that the Claytons complied strictly with the terms of the contract until they left the James home two days before the death of J. R. James. A fair deduction from the evidence is that the Claytons were forced to leave by the unjustified acts of Mrs. James, and that they continued to carry out the terms of the contract to the best of their ability.

In view of our conclusion that the judgment is sustained by the weight of the evidence, it is unnecessary to determine whether or not the pleadings would support a contrary judgment if the facts were different.

The judgment is affirmed.